**In re THE FINOVA GROUP, INC., FINOVA Capital Corporation, FINOVA (Canada) Capital Corporation, FINOVA Capital, PLC, FINOVA Loan Administration, Inc., FINOVA Mezzanine Capital, Inc., FINOVA Portfolio Services, Inc., FINOVA Technology Finance, Inc., and FINOVA Finance Trust, Reorganized Debtors.**

**The FINOVA Group, Inc., et al., Appellants/Cross–Appellees,**

**v.**

**BNP Paribas, Appellee/Cross–Appellant.**

**The FINOVA Group, Inc., et al., Appellants/Cross–Appellees,**

**v.**

**JP Morgan Chase Bank, Appellee/Cross–Appellant.**

**Nos. 01–0697–PJW to 01–0705–PJW. CIV.A.Nos. 02–1632 JJF, 02–1633 JJF, 03–181 JJF, 03–231 JJF.**

United States District Court, D. Delaware.

Feb. 5, 2004.

Mark D. Collins, Esquire, Rebecca L. Booth, Esquire, Etta R. Wolfe, Esquire of Richards, Layton & Finger, P.A., Wilmington, DE. Of Counsel: Jonathan M. Landers, Esquire, M. Natasha Labovitz, Esquire and Georgia K. Winston, Esquire of Gibson, Dunn & Crutcher LLP, for Appellant/Cross–Appellee, The FINOVA Group, et al.

Selinda A. Melnik, Esquire and Margaret Manning, Esquire of Buchanan Ingersoll Professional Corporation, Wilmington, DE. Of Counsel: Craig D. Mills, Esquire and Thomas P. Manning, Esquire of Buchanan Ingersoll Professional Corporation, Philadelphia, PA, Richard F. Broude, Esquire of Law Offices of Richard F. Broude, New York City, for Appellee/Cross–Appellant, BNP Paribas.

Howard A. Cohen, Esquire of Reed Smith LLP, Wilmington, Delaware. Of Counsel: Robert C. Shenfeld, Esquire of Reed Smith Crosby Heafey LLP, Los Angeles, CA, for Appellee/Cross–Appellant, JP Morgan Chase Bank, as Administrative Agent.

### *OPINION*

FARNAN, District Judge.

Pending before the Court is an appeal by FINOVA Capital Corporation ("FNV Capital") and its related debtors and reorganized debtors (collectively, the "Debtors") from two Orders issued by the Bankruptcy Court: (1) the Order Granting In Part And Denying In Part The Motion Of BNP Paribas To Allow Claim For Utilization Fees, Facility Fees And Costs And Expenses Including Attorneys' Fees In Connection With The Third Amended And Restated Joint Plan Of Reorganization Of Debtors Under Chapter 11 (the "BNP Order") and (2) the Order Granting In Part And Denying In Part The Motion Of JP Morgan Chase Bank To Fix And Allow Claim Pursuant To Sections 105(a),

1123(a)(4) and 1129(a)(1) Of The Bankruptcy Code And Bankruptcy Rule 9014 (the "Chase Order").[1] By their appeal, the Debtors contend that the Bankruptcy Court erred in concluding that FNV Capital was required to pay utilization fees to BNP Paribas ("BNP") and JP Morgan Chase Bank ("Chase") as a condition of confirmation of the Debtors' Plan of Reorganization (the "Plan").

The Court is also presented with the cross-appeal of BNP and Chase from the BNP and Chase Orders, respectively. By its cross-appeal, BNP contends that the Bankruptcy Court erred in denying BNP's claim for facility fees and costs, including attorneys' fees. Similarly, by its cross-appeal, Chase contends that the Bankruptcy Court erred in denying its claim for administrative agent facility fees, professional fees and expenses. For the reasons discussed, the Court will affirm the Orders of the Bankruptcy Court.

## I. THE PARTIES' CONTENTIONS

### A. *The Debtors' Appeal*

By their appeal, the Debtors contend that the Bankruptcy Court erred by (1) requiring FNV Capital to pay utilization fees to BNP and Chase as a necessary component of either the terms of the Debtors' Plan or Section 1123(a)(4) of the Bankruptcy Code and (2) determining that the interest due on the utilization fees should be calculated according to the Credit Agreements of BNP and Chase, instead of pursuant to the Plan. With regard to the payment of utilization fees, the Debtors make three arguments.

First, the Debtors contend that under the plain language of Section 5.11 of the Plan, utilization fees were not payable as a component of interest or otherwise. To this effect, the Debtors direct the Court to the language of Section 5.11(a), which provides that BNP and Chase are entitled to interest at the contract rate "but not the default rate, and excluding facility or other fees . . ." (Plan at § 5.11(a)).

Second, the Debtors contend that the Bankruptcy Court erred in admitting parol evidence to show that the utilization fees constituted a form of interest. According to the Debtors, the plain language of the BNP and Chase Credit Agreements made it clear that utilization fees were not considered interest. The Debtors point out that the Credit Agreements distinguish between interest and utilization fees by defining each in a different section and setting forth different guidelines for the calculation of each. Because there was no ambiguity in these agreements, the Debtors contend that the Bankruptcy Court erred in considering extrinsic evidence. However, even if this testimony was properly admitted, the Debtors contend that the testimony did not prove that utilization fees were a part of interest within the meaning of the Plan.

Third, the Debtors contend that the Bankruptcy Court misconstrued Section 1123(a)(4) to require equal payment among the creditors, instead of equal treatment. The Debtors maintain that while the creditors would not receive the same amount of postpetition or prepetition interest, each distribution for the Class FNV Capital–3 claims was calculated by the same method, i.e. according to the rate specified in the contract on which the claim was based. The Debtors acknowledge that this class of creditors included some claims that involved contracts and others that did not, and some claims that involved banks and others that did not. However, the Debtors contend that this classification was appro-

---

1. Although these two orders are titled differ-    ently, they are substantively identical.

priate, and that Chase and BNP never objected to the classification of their claim.

In the alternative, the Debtors contend that even if Chase and BNP were entitled to utilization fees, the Bankruptcy Court erred in calculating the amount of interest due on those fees. According to the Debtors, the Bankruptcy Court should have calculated interest on the utilization fees according to the provisions of the Plan and not pursuant to the default rates specified in the Chase and BNP Credit Agreements.

In response, BNP and Chase contend that the Bankruptcy Court correctly concluded that Section 1123(a)(4) of the Bankruptcy Code required the payment of utilization fees to BNP and Chase. BNP and Chase contend that if the definition of "interest" excludes the payment of utilization fees, then BNP and Chase would be denied a substantial part of their prepetition and postpetition interest. BNP and Chase contend that this violates Section 1123(a)(4), because the other lenders, who all had Bank Credit Agreements similar to the ones between the Debtors and BNP and Chase, received 100% of their prepetition and postpetition interest and this amount included utilization fees.

BNP and Chase agree that Section 1123 requires equal treatment and not equal payment. However, BNP and Chase contend that they are merely arguing for equal treatment, because the other Lenders, under their Credit Agreements, received payment for the utilization fees as a component of interest. Chase and BNP contend that the economic realities of the transaction between the Debtors and Chase and BNP were essentially the same as the transaction between the Debtors and the other Lenders, and therefore, Chase and BNP should be treated the same as the other Lenders in having their utilization fees paid.

With regard to the Bankruptcy Court's decision to admit the testimony of Mr. Tracy and Mr. Rush, Chase and BNP contend that the Bankruptcy Court appropriately admitted this testimony. First, Chase and BNP point out that the Debtors did not object to this evidence at the hearing. Second, Chase and BNP contend that the parol evidence rule does not apply to preclude this testimony. According to Chase and BNP, the parol evidence rule only precludes the admission of antecedent understandings and negotiations for the purpose of varying the terms of the contract, and Chase and BNP contend that this testimony was evidence of subsequent conduct used to demonstrate that the Debtors treated the payment of utilization fees as interest. Further, Chase and BNP contend that testimony may properly be heard to evaluate whether a plan complies with Section 1123, and therefore, the parol evidence rule is inapplicable in this context.

With respect to the manner in which the Bankruptcy Court calculated interest on the award of utilization fees, BNP contends that the Debtors waived this issue by failing to include it in the Debtors' "Statement of Issues on Appeal." In the alternative, BNP contends that Section 5.11 of the Plan does not apply to its claims for interest on the utilization fees and that the rate used by the Bankruptcy Court comports with the parties' expectations with regard to the rate that would have applied if the Debtors had paid the utilization fees to BNP and Chase on the distribution date. Chase contends that the language of the Bankruptcy Court's Order with respect to interest tracks the language of the Plan, and therefore, the Bankruptcy Court's interest calculation was not erroneous.

### B. *Cross Appeal of BNP and Chase*

By its cross-appeal, Chase and BNP contend that the Bankruptcy Court erred

in concluding that Chase and BNP were not entitled to facility fees, attorneys' fees and expenses. Chase contends that the Bankruptcy Court should not have looked to the Plan to determine if facility fees, attorneys' fees and expenses were permitted. Rather, Chase contend that this issue is governed by Section 502 of the Bankruptcy Code which deems a claim allowed unless objected to by a party in interest and provides for nine exceptions to the allowance of claims. Because these exceptions do not apply, Chase contends that their claim should be allowed.

BNP contends that the Court may look to the Plan, and that under the terms of the Plan, BNP is entitled to the payment of its prepetition facility fees, attorneys' fees and expenses. Pursuant to Section 5.2(c) of the Plan, BNP contends that it is entitled to "the full amount" of its General Unsecured Claim. BNP also contends that the term "principal" is undefined in the Plan, and should be read broadly to include more than just the loan amounts due to BNP and Chase. BNP also contends that Section 5.11 of the Plan, upon which the Bankruptcy Court relied to exclude these fees, applies only to claims for prepetition and postpetition interest. With respect to its postpetition fees and expenses, BNP contends that the Debtor is contractually bound to pay those fees and other courts, including the United States Courts of Appeals for the Second and Eleventh Circuits have recognized the creditor's right to collect such payments. *See e.g. In re Sure–Snap Corp.*, 983 F.2d 1015 (11th Cir.1993); *In re United Merchants & Manufacturers, Inc. v. The Equitable Life Assurance Society*, 674 F.2d 134, 137 (2d Cir.1982).

In response, the Debtors contend that the Bankruptcy Court correctly concluded that the Plan did not provide for the recovery of facility fees, attorneys' fees and expenses, and therefore, the Bankruptcy Court appropriately declined to award these sums to Chase and BNP. The Debtors maintain that pursuant to Section 5.2(c) of the Plan, Chase and BNP are entitled to only the "principal amount" of their claims plus interest, and that the term "principal" refers to their loan amounts and not to any other fees or expenses that they incurred. The Debtors further contend that Section 5.11 of the Plan excludes from the definition of "interest" the payment of all fees. Thus, the Debtors maintain that facility fees, attorneys' fees and costs are not recoverable as either principal or interest, and therefore, Chase and BNP are not entitled to the recovery of these fees and costs.

## II. STANDARD OF REVIEW

The Court has jurisdiction to hear an appeal from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a). In undertaking a review of the issues on appeal, the Court applies a clearly erroneous standard to the Bankruptcy Court's findings of fact and a plenary standard to its legal conclusions. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir.1999). With mixed questions of law and fact, the Court must accept the Bankruptcy Court's finding of "historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 642 (3d Cir.1991) (citing *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–02 (3d Cir.1981)). The appellate responsibilities of the Court are further understood by the jurisdiction exercised by the Third Circuit, which focuses and reviews the Bankruptcy Court decision on a *de novo* basis in the

first instance. *In re Telegroup*, 281 F.3d 133, 136 (3d Cir.2002).

## III. DISCUSSION

### A. *Whether The Bankruptcy Court Erred In Awarding BNP And Chase Utilization Fees As A Component Of Interest And In Calculating The Interest Due On The Utilization Fees*

■ After reviewing the decision of the Bankruptcy Court, the Court concludes that the Bankruptcy Court correctly concluded that the Plan would violation Section 1123 of the Bankruptcy Code unless Chase and BNP were awarded the utilization fees due under their respective Credit Agreements with the Debtors. In reaching this determination, the Bankruptcy Court's decision contained both factual and legal components.

Considering the testimony of Mr. Tracy and Mr. Rush, as well as the deposition testimony of Richard Ross presented by the Debtors, the Bankruptcy Court found that there was essentially no difference between the Credit Agreements of Chase and BNP when compared to the Credit Agreements between the Debtors and the other Lenders, and that the utilization fees were appropriately considered as interest under the Chase and BNP Credit Agreements, even though they were approached in a slightly different manner under the Agreements. In this regard, the Bankruptcy Court stated:

> [Mr. Tracy's] testimony, I think, is basically unchallenged that the difference between these two credit agreements and the other four is a matter of what counsel the banks selected or the debtor selected to draft these agreements. And apparently in this industry, there are several ways to do it and these two agreements were done differently from the others. And as a result, I think you get an anomaly under the terms of the Plan when economic realities are that [the six FNV Credit Agreements] are really no different ... [A]ll of these transactions were essentially of the same structure in terms of cost, i.e. the interest cost to the borrower. And they just approached the calculation and the payments in a slightly different fashion.

> \*   \*   \*   \*   \*   \*

> I think the testimony of Mr. Tracy was pretty effective in demonstrating that— all of these loan agreements basically provided for a LIBOR plus 100 or 110 basis points plus a—in the case of these two transactions, a utilization fee which is a risk-generated provision having the effect of increasing borrowing cost, which is essentially—which produces the same result as increasing the margin provision of the other contracts.

(Tr. at 110–111). The testimony and evidence heard by the Bankruptcy Court supports its factual findings, and therefore, the Court cannot conclude that those findings were clearly erroneous.

■ As for whether the Bankruptcy Court, as a legal matter, properly considered this evidence in light of the parol evidence rule, the Court concludes that the Bankruptcy Court's decision to admit the evidence was not erroneous. First, as Chase points out, the Debtors did not preserve any objection to the testimony, and therefore, the Debtors waived their right to challenge the admission of this testimony on appeal. *See* Fed.R.Evid. 103(a)(1) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected and (1) ... In case the ruling is one admitting evidence, a timely objection or motion to strike appears in the record."); Fed. Bankr.R.P. 9017 (applying Federal Rules of Evidence to bankruptcy

proceedings). Second, even if the Court considers the Debtors' challenge under the parol evidence rule, the Court concludes that the Bankruptcy Court correctly concluded that the parol evidence rule was inapplicable. The parol evidence rule precludes the admission of antecedent understandings and negotiations for the purpose of varying or contradicting a writing. *Battery Steamship Corp. v. Refineria Panama, S.A.*, 513 F.2d 735, 738 (2d Cir.1975) (citing 3 A. Corbin, *Contracts*, § 573 at 357 (1960)). In this case, the Bankruptcy Court properly heard testimony to determine whether the Plan complied with the elements of Section 1123 of the Bankruptcy Code. The Bankruptcy Court was not bound by the Plan language in this regard, because the parties agreed by stipulation that Chase and BNP preserved its right to challenge whether the Plan was confirmable absent payment of the utilization fees to BNP and Chase. Further, the testimony was relevant to the manner in which the Debtors treated the utilization fees, subsequent to the execution of the Credit Agreements and during the course of their performance under the Credit Agreements. *See e.g. Cantrade Private Bank Lausanne Ltd. v. Torresy*, 876 F.Supp. 564, 573 (S.D.N.Y.1995) (recognizing that parol evidence rule doesn't preclude introduction of evidence related to events occurring subsequent to the execution of the agreement, even if the agreement is unambiguous). Accordingly, the Court concludes that the Bankruptcy Court did not err in admitting this testimony.

■ With respect to the Bankruptcy Court's ruling that the Plan would violate Section 1123 of the Bankruptcy Code unless utilization fees were awarded to Chase and BNP as a component of interest, the Court concludes, applying a plenary standard of review, that the Bankruptcy Court's conclusion was not erroneous.

Section 1123(a)(4) requires the plan to "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 U.S.C. § 1123(a)(4). The requirements of Section 1123 do not require the parties to receive equal payment, and the Court does not read the Bankruptcy Court's ruling to require equal payment. Rather, the Bankruptcy Court correctly found that all of the Bank Credit Agreements were essentially the same and that the other Lenders were actually awarded utilization fees under their interest components. To treat Chase and BNP differently would be to ignore the economic realities of their Credit Agreements, elevate form over substance and violate the equal treatment mandate of Section 1123(a)(4). Accordingly, the Court will affirm the Bankruptcy Court's decision to the extent that it awarded utilization fees to Chase and BNP.

■ As for the Debtors' contention that the Bankruptcy Court erred in calculating interest on the utilization fees, the Court concludes that the Bankruptcy Court's calculation was not erroneous. As Chase points out, the language of the Bankruptcy Court's order is essentially a more detailed expression of the language of the Plan. To the extent that the Debtors contend that the Bankruptcy Court erred in fixing the rate and should have permitted the rate to fluctuate, the Court is not persuaded by the Debtors' arguments. In the Court's view, the Bankruptcy Court's calculation reflects a reasonable reading of Section 5.11 of the Plan and comports with the manner in which interest is calculated under the Plan. Accordingly, the Court concludes that the Bankruptcy Court's decision was not erroneous.

B. *Whether The Bankruptcy Court Erred In Concluding That Chase And BNP Were Not Entitled To Facility Fees, Attorneys' Fees And Expenses*

By their cross-appeal, BNP and Chase contend that the Bankruptcy Court erred as a matter of law in failing to award facility fees, attorneys' fees and costs to BNP and Chase. A proper analysis of this matter requires the Court to break the sums down into prepetition and postpetition sums.

■■■ With respect to the postpetition claims for attorneys' fees and expenses by BNP and Chase, the Court concludes that the Bankruptcy Court correctly concluded that such fees and expenses are not recoverable. The Bankruptcy Court thoroughly addressed this issue in *In re Loewen Group Int'l, Inc.*, 274 B.R. 427, 444 n. 36 (Bankr.D.Del.2002), and the views expressed in *Loewen* are recognized as the majority approach. *See e.g. In re Pride Companies, L.P.*, 285 B.R. 366, 372 (Bankr.N.D.Tex. Sept.30, 2002) (collecting cases). The Court agrees with and adopts the rationale espoused in *Loewen* for denying postpetition fees and expenses here, and concludes that the Bankruptcy Court correctly denied BNP and Chase's claim for such fees.

■■■ With respect to the prepetition claims of BNP and Chase for facility fees, attorneys' fees and costs, the Court likewise concludes that the Bankruptcy Court correctly declined to award these fees. The only provisions in which facility fees are mentioned in the Plan, are provisions excluding those fees. (Plan § 5.11(a)). Further, the recovery of attorneys' fees and costs are not provided for in the Plan, and no other creditors received payment of those expenditures. Indeed, Section 5.2(c) of the Plan provides that the distribution to be received by creditors holding General Unsecured Claims consists of, among other things, 70% of the principal amount of their claims. Although Chase and BNP contend that the term "principal" should not be limited to the banking context, the Court concludes that interpreting the word principal to exclude attorneys' fees and other costs is reasonable, particularly where, as here, other creditors did not recover attorneys' fees and costs.

As for the Bankruptcy Court's reference to Section 5.11(a), Chase and BNP contend that this section applies only to interest. While the Court understands the argument of Chase and BNP, the Court is not persuaded that the Bankruptcy Court erred. Given the overall context of the Plan, the provisions of Section 5.2, and the distributions made to the other creditors under the Plan, the Court concludes that the Bankruptcy Court reasonably interpreted and applied the Plan to exclude facility fees, attorneys' fees and costs. Accordingly, the Court will affirm the decision of the Bankruptcy Court excluding these fees.

## IV. CONCLUSION

For the reasons discussed, the Court will affirm the Chase Order and the BNP Order issued by the Bankruptcy Court.

An appropriate Order will be entered.

### *FINAL ORDER*

At Wilmington, this 5th day of February 2004, for the reasons set forth in the Opinion issued this date;

IT IS HEREBY ORDERED THAT:

1. The Order Granting In Part And Denying In Part The Motion Of BNP Paribas To Allow Claim For Utilization Fees, Facility Fees And Costs And Expenses Including Attorneys' Fees In Connection With The Third Amended And Restated

Joint Plan Of Reorganization Of Debtors Under Chapter 11 is AFFIRMED.

2. The Order Granting In Part And Denying In Part The Motion Of JP Morgan Chase Bank To Fix And Allow Claim Pursuant To Sections 105(a), 1123(a)(4) and 1129(a)(1) Of The Bankruptcy Code And Bankruptcy Rule 9014 is AFFIRMED.